IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Stephany Mae Goodshield,     )     Civil Action No.  8:14-cv-01809-MGL-JDA
     )
              Plaintiff,     )
     )
        vs.     )     **REPORT AND RECOMMENDATION**
     )     **OF THE MAGISTRATE JUDGE**
Carolyn W. Colvin,     )
Commissioner of Social Security,     )
     )
          Defendant.     )

This matter is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for supplemental security income ("SSI").[2]  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

**PROCEDURAL HISTORY**

In August 29, 2007, Plaintiff filed a claim for SSI, alleging an onset of disability date of March 1, 2006.  [R. 186–193.]  The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration").  [R. 90–93].  Plaintiff requested a hearing before an administrative law judge ("ALJ"), and, on February 18, 2010 (record

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

held open to obtain medical records), May 28, 2010 (rescheduled because Plaintiff did not have proper identification to enter hearing room), and July 22, 2010, ALJ Arthur L. Conover either continued Plaintiff's hearings or conducted a de novo hearing on Plaintiff's claim. [R. 27–33; 34–42; and 43–89.] The ALJ issued a decision on July 28, 2010, denying the claim. [R. 483–98.] The Appeals Council denied review of that decision. [R. 5]

On August 2, 2012, the United States District Court for the District of South Carolina granted the Commissioner's motion to remand the case for further administrative proceedings and directed further consideration of the claimant's mental impairments, subjective complaints, residual functional capacity ("RFC"), and vocational factors.[3] [R. 507–08.] The Appeals Council Order dated October 15, 2012, vacated the final decision of the Commissioner, remanded the case to the ALJ, and additionally required the ALJ to: (1) consider treatment records showing a 3-week hospitalization after Plaintiff's attempted suicide; (2) consider records documenting a year-long stay in a group home; and evaluate Plaintiff's documented mental impairments under the Special Technique described in 20 C.F.R. 416.920a. [R. 509–13.]

The same ALJ held a subsequent hearing on February 19, 2013, [R. 410–457], and, on May 3, 2013, the ALJ issued a decision finding Plaintiff not disabled from January 9, 2008[4], the amended alleged onset date, through the date of the decision. [R. 389–408.]

---

[3]See Order, *Goodshield v. Astrue*, C/A No. 8:11-1177-MGL-JDA (D.S.C. Aug. 2, 2012) (granting the Commissioner's motion to remand the case; the Commissioner believed that further administrative action was necessary in this case), ECF No. 21, 22.

[4]This date was Plaintiff's eighteenth birthday. [Doc. 12 at 1.]

2

At Step 1[5], the ALJ found Plaintiff had not engaged in substantial gainful activity since January 9, 2008. [R. 394, Finding 1.] At Step 2, the ALJ found Plaintiff had the following severe combination of impairments: an affective disorder, an organic mental disorder, borderline personality disorder, and post-traumatic stress disorder ("PTSD"). [R. 395, Finding 2.] The ALJ also found Plaintiff had non-severe impairments of asthma and obesity. [*Id.*] At Step 3, the ALJ determined Plaintiff's impairments did not meet or medically equal the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; the ALJ specifically considered Listings 12.02, 12.04, 12.06, and 12.08[6] of the Listing of Impairments. [R. 395, Finding 3.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work ("PRW"), the ALJ found Plaintiff retained the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of work at all exertional levels but with the following nonexertional limitations: due to her mental impairments, she is restricted to simple, routine work, not involving waiting on members of the public as customers. She can work alone or with only a small group of co-workers and, if working with a group, cannot engage in team-type interaction with her co-workers.

[R. 396, Finding 4.] At Step 4, the ALJ noted that Plaintiff had no PRW. [R. 401, Finding 5.] Considering Plaintiff's age, education, work experience, and RFC, however, the ALJ determined at Step 5 that there were jobs that existed in significant numbers in the national

---

[5]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra.*

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911 and 416.925.

economy that Plaintiff could perform. [R. 402, Finding 9.] Accordingly, the ALJ determined Plaintiff had not been under a disability since January 9, 2008, the amended alleged onset date, and that, based on the applications for SSI filed on August 29, 2007, and February 3, 2011, Plaintiff was not disabled under the Social Security Act ("the Act").[7] [R. 402, Finding 10.]

Plaintiff requested Appeals Council review of the ALJ's May 3, 2013, decision, but the Appeals Council declined review, refused to assume jurisdiction, and found that the ALJ's decision complied with this Court's remand order and Appeals Council's orders. [R. 382–85.] The Appeals Council further noted that the ALJ's decision was supported by substantial evidence and was consistent with Social Security laws. [R. 382.]

Plaintiff filed this action for judicial review on May 5, 2014. [Doc. 1.] On October 29, 2014, Plaintiff filed her brief and attached seventeen pages of medical records. [Doc. 12; Doc. 12-1 at 1–17.] On December 10, 2014, the Commissioner filed her brief. [Doc. 13.] On February 16, 2015, Plaintiff filed a motion to include with her brief an attached statement from a psychiatrist dated February 26, 2013. [Doc. 16; Doc. 16-1.] The Commissioner filed a response on February 27, 2015, requesting that the motion be denied. [Doc. 17.]

## THE PARTIES' POSITIONS

Plaintiff alleges the ALJ "inappropriately encouraged counsel to amend the onset date in this case to January 9, 2008, the claimant's 18th birthday"; failed to consider a

---

[7]The ALJ explained that Plaintiff had filed a later application on February 3, 2011, and the Appeals Council had directed that the new application be considered with the earlier claim, which he did. [R. 392.]

4

closed period of disability between April 2006 and October 2007; and, failed to consider the continuing severity of Plaintiff's mental health problems. [Doc. 12 at 1, 3–4.] As noted above, Plaintiff also moved to have a letter from Dr. Ronald Rosenberg ("Dr. Rosenberg"), considered in this appeal. [Doc. 16.]  In the letter, Dr. Rosenberg advised that Plaintiff attends an Adult Day Program to help her with independent living skills, interpersonal skills and symptoms management skills; that Plaintiff had been diagnosed with Schizophrenia; that Plaintiff was, at that time, "taking an Invega Susetenna injection to help her with her new symptoms of Schizoaffective Disorder"; and that Plaintiff "is not capable of working, due to her chronic condition and state of mind." [Doc. 16-1.]

The Commissioner contends Plaintiff, who was represented by counsel, knowingly and voluntarily agreed to amend her alleged onset date and, regardless, the ALJ explicitly considered Plaintiff's treatment as a child, including her inpatient treatment; that substantial evidence supports the ALJ's May 3, 2013, decision that Plaintiff was not disabled from all work; and, Plaintiff's additional medical records attached to the brief fail to support a sentence six remand because they are neither new nor material.  [Doc. 13 at 5–6, 12–14.] The Commissioner further requests that this Court deny Plaintiff's motion to include Dr. Rosenburg's letter because the motion is untimely; and, Plaintiff failed to demonstrate, pursuant to sentence six, that the evidence is new and material and good cause exists for not producing it earlier. [Doc. 17.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must

5

include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient

6

reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light*

7

*Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

8

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[8]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

---

[8]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).   The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.   20 C.F.R. § 416.920.   Through the fourth step, the burden of production and proof is on the claimant.   *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).   The claimant must prove disability on or before the last day of her insured status to receive disability benefits.   *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).   If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.   *Grant*, 699 F.2d at 191.   If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.   20 C.F.R. § 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* § 416.974–.975.

**B.    *Severe Impairment***

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

11

### C.     *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[9]     20 C.F.R. § 416.920(a)(4)(iii), (d).

### D.     *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[10] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 416.960(b).

### E.     *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. § 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner

---

[9]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[10]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).

may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from

an exertional impairment, without significant nonexertional factors.[11]  20 C.F.R. Pt. 404,

Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983)

(stating that exclusive reliance on the grids is appropriate in cases involving exertional

limitations).  When a claimant suffers from both exertional and nonexertional limitations, the

grids may serve only as guidelines.   *Gory*, 712 F.2d at 931.   In such a case, the

Commissioner must use a vocational expert to establish the claimant's ability to perform

other work.  20 C.F.R. § 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have

found that the grids cannot be relied upon to show conclusively that claimant is not

disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove

by expert vocational testimony that despite the combination of exertional and nonexertional

impairments, the claimant retains the ability to perform specific jobs which exist in the

national economy.").   The purpose of using a vocational expert is "to assist the ALJ in

determining whether there is work available in the national economy which this particular

claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to

be relevant, "it must be based upon a consideration of all other evidence in the record, . .

---

[11]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 416.969a(c)(1).

. and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3)

14

supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

16

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself,

> support a finding of disability. Objective medical evidence of
> pain, its intensity or degree (i.e., manifestations of the
> functional effects of pain such as deteriorating nerve or muscle
> tissue, muscle spasm, or sensory or motor disruption), if
> available, should be obtained and considered. Because pain
> is not readily susceptible of objective proof, however, the
> absence of objective medical evidence of the intensity,
> severity, degree or functional effect of pain is not
> determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485;

*see also* 20 C.F.R. § 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the

record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ

must articulate specific and adequate reasons for doing so, or the record must be obvious

as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Although credibility determinations are generally left to the ALJ's discretion, such

determinations should not be sustained if they are based on improper criteria. *Breeden*,

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

advantage of having heard the testimony firsthand, and ordinarily we may not disturb

credibility findings that are based on a witness's demeanor. But administrative findings

18

based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

The role of the federal judiciary in the administrative scheme established by the Act is narrowly tailored "to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). In assessing whether there is substantial evidence, it is not the duty of the reviewing court to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original). Yet, Plaintiff's arguments, which do not specifically address any alleged error at any step of the ALJ's analysis, appear to invite the Court to conduct its own re-weighing of the evidence. The Court declines to so engage.

**The Amended Onset Date and Plaintiff's Request for a Closed Period of Disability**

As an initial matter, the Court has reviewed the February 19, 2013, hearing transcript and notes that the same attorney represented Plaintiff during that hearing. [R. 410.] After an off the record discussion, counsel for Plaintiff and Plaintiff agreed to amend the alleged onset date so that Plaintiff could be considered as an adult and indicated their agreement on the record. [R. 413.] It was noted that Plaintiff had filed her application four months before her eighteenth birthday and, "to avoid having to deal with her during that period when she was a child, we can now just deal with her as an adult. . . ." [*Id.*] Plaintiff contends that the ALJ "should never have advised claimant to amend the onset date to January 9, 2008." [Doc. 12 at 4.] However, Plaintiff has failed to explain why her agreement to amend her onset date was somehow prejudicial or improperly imposed by the ALJ. To

19

the contrary, a review of the decision shows the ALJ clearly considered Plaintiff's impairments from her childhood beginning March 22, 2006, through as late as May 2011. [*See* R. 398–401].

With respect to Plaintiff's argument that the ALJ should have considered a closed period of disability from April 2006 through October 2007 (all prior to Plaintiff's eighteenth birthday), Plaintiff waived this argument when she amended the alleged onset date to January 9, 2008. And, even if Plaintiff had not waived the argument, she failed to address any of the elements of proof required to find an individual under the age of eighteen disabled. For example, an individual under age eighteen will be considered disabled if she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(I). The Commissioner's regulations require the ALJ to apply a three-part test: (1) determine whether the child is currently engaged in substantial gainful activity. If so, she is not disabled; if not, (2) determine whether the child has a severe impairment or impairments. If not, she is not disabled; if so, (3) determine whether the child's impairments meet, medically equal or functionally equaled any listed impairment. If not, he is not disabled. See 20 C.F.R. § 416.924(b)-(d). To establish functional equivalence, the claimant must have a medically determinable impairment or combination of impairments that results in "marked" limitations in two domains or an "extreme" limitation in one domain. *See id.* § 416.926a(a). The Commissioner considers how the claimant functions in activities in terms of six domains or broad areas of functioning intended to capture all of what a child can or cannot do. *See id.* § 416.926a(b)(1). Plaintiff has failed to address any of these requirements in arguing that Plaintiff was entitled to a closed period of disability from her childhood years; and, thus,

notwithstanding the issue of waiver, she failed to meet her burden of proving disability for

a closed period between April 2006 through October 2007.

**The Continuing Severity of Plaintiff's Mental Health Problems**

Plaintiff contends that the ALJ failed to consider the continuing severity of Plaintiff's

mental health problems, and this Court should find Plaintiff was disabled and award

benefits.  Upon review, substantial evidence supports the ALJ's decision.  The ALJ gave

consideration to Plaintiff's two different inpatient hospitalizations, one in 2006 and one in

2011. [R. 396, 398–99.] However, the ALJ concluded that Plaintiff's

> clinical picture reflected in these treatment records shows quite
> limited objective findings to support the degree of limitations
> asserted by the claimant. Her treatment has been quite erratic,
> ... with periods without treatment, including her admission that
> she has not received mental health treatment since May 2011
> (a period of nearly two years).  No diagnostic studies or other
> reports have shown significant physical findings. There are no
> clinical findings to substantiate disability.

[R. 400–01.] The ALJ took into consideration Plaintiff's continued use of marijuana and the

fact that she had not been treated for mental illness since May 2011 as indicative of her

symptoms being less severe than alleged.  [R. 401.] Further, the ALJ found compelling the

fact that no treating physician suggested any functional limitations for Plaintiff. [*Id.*] Also,

the  ALJ  found  that  her  activities  of  daily  living—driving,  cooking,  helping  with

chores—revealed that Plaintiff's subjective symptoms were not entirely credible. [*Id.*]  The

ALJ properly explained that he relied on Dr. DePace's opinion as to her mental capacity for

functional activities, and he relied on State agency medical and psychological consultants'

opinions that Plaintiff could perform a range of unskilled work.  [*Id.*] Accordingly, Plaintiff

has failed to prove that the ALJ failed to consider the continuing severity of Plaintiff's mental health problems.

**Plaintiff's Request to Have This Court Consider New Evidence**

Plaintiff seeks to have the Court re-weigh evidence considered by the ALJ in light of additional evidence submitted to this Court which was not presented to the ALJ.[12]  For instance, Plaintiff attached evidence to her brief including documents considered by the ALJ as well as two pages of treatment notes from April 2014 which were not presented to the ALJ. [Doc. 12-1 at 1–2.] Also, Plaintiff filed a February 16, 2015, motion to present a letter from Dr. Rosenberg dated February 26, 2013. [Doc. 16.] As explained above, in the letter, Dr. Rosenberg advised that Plaintiff attends an Adult Day Program to help her with independent living skills, interpersonal skills and symptoms management skills; that Plaintiff had been diagnosed with Schizophrenia; that Plaintiff was, at that time, "taking an Invega Susetenna injection to help her with her new symptoms of Schizoaffective Disorder"; and that Plaintiff "is not capable of working, due to her chronic condition and state of mind." [Doc. 16-1.]  The letter also briefly summarized Plaintiff's medical history.  [*Id.*]

Plaintiff, however, puts forth no explanation regarding why she failed to present the February 26, 2013, letter to the ALJ prior to his May 3, 2013, decision; why the April 2014 treatment notes related back to the relevant time period; why she did not submit the letter to this Court with Plaintiff's brief filed on October 29, 2014, or in a reply brief; or, how consideration of any of this new evidence requires remand of the ALJ's decision or a finding

---

[12]The Court cannot determine whether Plaintiff submitted Dr. Rosenberg's February 26, 2013, letter to the Appeals Council when she requested it to review the ALJ's May 3, 2013, decision.

that his decision is not supported by substantial evidence. *Cf. Melkonyan v. Sullivan*, 501 U.S. 89, 99–100 (1991) (for a sentence six remand, the district court must find the plaintiff showed good cause for failing to present the evidence earlier). Upon review, Plaintiff's motion to submit new evidence was untimely filed pursuant to Local Rule 83.VII.04–05, D.S.C., and it does not indicate good cause.[13]

The law is clear: through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir.1981). Here, Plaintiff failed to meet her burden at Steps 1 through 4 and has pointed the Court to no error on the part of the ALJ which would require remand for additional proceedings. Thus, in light of the above, the Court cannot find that the ALJ's decision is not supported by substantial evidence.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that Plaintiff's motion to include with her brief an attached statement from Dr. Rosenberg dated February 26, 2013, be DENIED, and the decision of the Commissioner be AFFIRMED.

IT IS SO RECOMMENDED.

---

[13]If Plaintiff believes her functional abilities to work and medical conditions have deteriorated since the date of the ALJ's May 3, 2013, decision, she may file a new application for SSI benefits. *See* 20 C.F.R. §416.330(b); *cf. Martini-Roth v. Colvin*, C/A No. 1:12-1568-SVH, 2013 WL 4511250, at *1, 10–11 (D.S.C. Aug. 23, 2013) (referring to the fact that sufficient work credits are needed to qualify for disability insurance benefits as opposed to SSI benefits which does not require work credits).

July 28, 2015                          s/Jacquelyn D. Austin
Greenville, South Carolina             United States Magistrate Judge